IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROSEANNE L. S.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

        Defendant.

Case No. 6:18-cv-02179-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Roseanne S. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

**BACKGROUND**

Born in 1980, plaintiff alleges disability for the closed period of April 22, 2015, through March 23, 2017, due to fibromyalgia, insomnia, post-traumatic stress disorder ("PTSD"), anxiety, depression, and headaches, conditions which were temporarily exacerbated by a June 28, 2012, motor vehicle accident.[2] Tr. 37-38, 164, 189. On November 1, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 35-66. On March 5, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-24. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 15. At step two, the ALJ determined plaintiff's fibromyalgia was medically determinable and severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 416.967(b) except she can: tolerate "frequent but not constant contact with the public and with coworkers" and occasional contact with supervisors; and frequently stoop and climb ramps, stairs, ladders, ropes, and scaffolds. Tr. 18.

---

[2] Plaintiff initially alleged disability beginning June 28, 2012. Tr. 164. However, she began working in March 2017, such that she amended her alleged onset date at the hearing to run from the protective filing date through the date she resumed substantial gainful activity. Tr. 37-38, 184.

Page 2 – OPINION AND ORDER

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 22. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite her impairments, such as inserting machine operator, collator operator, and small parts assembler. Tr. 22-23.

## DISCUSSION

This case hinges on the ALJ's treatment of state agency consulting source Joshua Boyd, Ph.D. Plaintiff argues the ALJ erred: (1) by rejecting Dr. Boyd's preliminary findings about the severity of her mental impairments at steps two and three; and (2) failing to account for all of Dr. Boyd's concrete functional limitations in the RFC. Pl.'s Opening Br. 5-8 (doc. 10).

In August 2015, Dr. Boyd completed the initial level of social security disability review. Tr. 67-80. In the "Findings of Fact and Analysis of Evidence" section, Dr. Boyd stated "M[ajor] D[epressive] D[isorder], PTSD . . . are severe." Tr. 70-73. Yet, in the immediately subsequent "Medically Determinable Impairments and Severity" section, Dr. Boyd remarked that plaintiff's medically determinable mental conditions were both "Secondary" and "Non Severe." Tr. 73. Nevertheless, Dr. Boyd determined plaintiff had "moderate" impairments in maintaining social functioning and concentration, persistence, or pace. Tr. 74. The doctor therefore prepared a mental RFC, in which he translated plaintiff's impairments into concrete functional restrictions. Tr. 77-78. In particular, Dr. Boyd opined that plaintiff was capable of "simple repetitive tasks," frequent but not constant contact with coworkers and the public, "occasional interaction with the supervisor," and "a normal 40 hour workweek." Id.

Upon reconsideration in December 2015, state agency consulting source Scott Kaper, Ph.D., reviewed additional evidence and concluded plaintiff's mental impairments were non-severe in both in the "Findings of Fact and Analysis of Evidence" and "Medically Determinable

Impairments and Severity" sections. Tr. 88. As a result, Dr. Kaper opined plaintiff's mental impairments caused no more than mild functional limitations; he nonetheless found that "[e]vidence supports the initial decision." Tr. 88-89.

In evaluating plaintiff's claim, the ALJ purported to give "great weight" to Dr. Boyd and Dr. Kaper, although he construed both doctors as "not find[ing] any severe mental impairments." Tr. 20-21. Nevertheless, in "an abundance of caution," the ALJ included a non-exertional RFC limitation for "frequent but not constant contact with the public and with coworkers" and "occasional contact with supervisor[s]." Tr. 18.

The reports of Drs. Boyd and Kaper constitute the only opinion evidence of record. In terms of treatment evidence, plaintiff did not seek counseling for the majority of the closed period at issue. Tr. 323-30, 337-51, 354-59, 363-65, 385-88, 394-98. Namely, the record reflects plaintiff attended five sessions with Christopher Smith, Ph.D., between May and July 2015. Tr. 323-30. There are no further records until December 2015, when plaintiff resumed care with Dr. Smith for approximately one month before terminating services "[d]ue to reduction of symptoms." Tr. 337-41, 350-51, 354-49, 363-65; see also Tr. 46-51, 54-58 (plaintiff's November 2017 hearing testimony indicating fibromyalgia, coupled with "an abusive relationship," were the primary bases of her disability claim: counseling ultimately "helped [plaintiff learn] skills to deal with stress and to help fight fibromyalgia and to get out of that relationship").

Plaintiff subsequently stopped all mental health medications until September 2016, when she reported "increased pain levels" and "feeling worse emotionally" to her primary care provider, Brent Godek, M.D. Tr. 382. By October 2016, plaintiff was "feeling much better," with improved

mood and pain levels. Tr. 384. Plaintiff thereafter did not assert any mental health complaints or obtain additional counseling during the dispositive time frame.[3]

I.   **Step Two and Three Findings**

At steps two and three, the ALJ is required to follow the psychiatric review technique if mental limitations are alleged. Keyser v. Comm'r of Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011) (citation omitted). This process entails that the ALJ "determine whether an applicant has a medically determinable mental impairment," "rate the degree of functional limitation for four functional areas," "determine severity of the mental impairment (in part based on the degree of functional limitation)," and, "if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder." Id. (citations omitted). The Commissioner "must document application of the technique in the decision." Id. (citations and internal quotations omitted).

In this case, the ALJ resolved step two in plaintiff's favor and continued the sequential evaluation process. Tr. 15-23. Even though the ALJ did not rate plaintiff's PTSD or depression as severe, he nonetheless completed the psychiatric review technique, expressly considering whether plaintiff's mental impairments "meet or medically equal the criteria of listings 12.04, 12.06, and 12.07" (i.e., depressive and related disorders, anxiety disorders, and somatic symptom and related disorders, respectively). Tr. 16-17; 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A(1). Specifically, the ALJ resolved that, during the relevant time period, plaintiff had "mild limitation" in understanding, remembering, or applying information; interacting with others; concentrating,

---

[3] Notably, plaintiff reinitiated counseling after she started working due to issues with her children, but ceased treatment a few months later because she had met her individual therapy goals. Tr. 342-49, 387-88, 394-98; see also Tr. 385 (Dr. Godek noting in March 2017 that plaintiff had "lots of stress – Grandma in and out of hospital, daughter moved out age 18 giving her hell [but she has] not gone for counseling in a long time").

Page 5 – OPINION AND ORDER

persisting, or maintaining pace; and managing oneself, with no episodes of serious and persistent mental disorder. Tr. 16-17. Accordingly, the ALJ concluded that the paragraph B and C criteria were not satisfied, such that plaintiff was not presumptively disabled at step three. Tr. 17.

Although plaintiff argues the ALJ should have found her mental impairments severe, as evidenced by the moderate limitations in social functioning and concentration, persistence, or pace outlined in Dr. Boyd's report, she does not argue that the record supports a "marked" or "extreme" rating in any of the four functional areas, which is required for a finding of presumptive disability in this context. Pl.'s Opening Br. 6 (doc. 10); 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A(2). As such, any purported error was harmless. Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017); see also Rios v. Comm'r Soc. Sec. Admin., 2012 WL 1718058, *3-5 (D. Or. May 15, 2012) (affirming the ALJ's step two and three findings under analogous circumstances).

Indeed, given the treatment record, coupled with the ambiguity in Dr. Boyd's assessment (especially as it relates to Dr. Kaper's subsequent report), it was reasonable for the ALJ to conclude plaintiff's mental impairments did not significantly limit her ability to do basic work activities. See 20 C.F.R. § 416.920(c) (defining a severe impairment or combination of impairments); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004) (court must "defer to the ALJ's conclusion" where the record "is subject to more than one rational interpretation").

## II. RFC Determination

The RFC is the maximum that a claimant can do despite his or her impairments. 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL

374184. Only limitations supported by substantial evidence must be incorporated into the RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, as addressed above, the ALJ purported to give "great weight" to Dr. Boyd's opinion but failed to account for his statement regarding "simple repetitive tasks" in the RFC. Tr. 18, 20. However, the ALJ also gave Dr. Kaper's opinion "great weight" because it was "supported by the record." Tr. 21. Thus, it appears as though the ALJ ultimately credited Dr. Kaper's report over Dr. Boyd's, but nonetheless included a social limitation to accommodate plaintiff's hearing testimony. See id. ("[o]ut of an abundance of caution, the undersigned assessed limits on social contact to account for [plaintiff's] non-severe mental impairment [in light of her] testimony"); see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ is responsible for resolving ambiguities in the record and translating the claimant's impairments into concrete functional limitations).

Even assuming the ALJ erred, such an error was harmless because each of the representative occupations identified by the VE involve a general educational development ("GED") reasoning level of two.[4] Tr. 61-62; DOT § 208.685-018 (inserting machine operator); DOT § 208.685-010 (collator operator); DOT § 739.687-030 (small parts assembler); see also Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

---

[4] The Commissioner's harmless error argument is premised on the fact that the jobs identified by the VE entail "a specific vocational preparation (SVP) of 2." Def.'s Resp. Br. 9 (doc. 11). Yet a job's SVP inheres to a separate vocational consideration: "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED reasoning level ratings." Meissl v. Barnhart, 403 F.Supp.2d 981, 983 (C.D. Cal. 2005) (citations and internal quotations and brackets omitted).

Page 7 – OPINION AND ORDER

While the Ninth Circuit has not directly addressed this issue, it is well-established within this District that "a claimant who is limited to 'simple, routine tasks and instructions' is capable of performing a job requiring Level Two reasoning." Patton v. Astrue, 2013 WL 705909, *1 (D. Or. Feb. 25, 2013); see also Watkins v. Comm'r Soc. Sec. Admin., 2016 WL 4445467, *6-7 (D. Or. Aug. 22, 2016) ("[t]he District of Oregon repeatedly has held that the limitation to perform simple and routine tasks is not inconsistent with Reasoning Level 2 jobs") (collecting cases); Lara v. Astrue, 305 Fed.Appx. 324, 326 (9th Cir. 2008) ("someone able to perform simple, repetitive tasks is capable of doing . . . Reasoning Level 2 jobs").

The Court finds these cases persuasive and adopts their reasoning as its own. The Court also finds that the tasks contemplated in the DOT descriptions for the jobs of inserting machine operator, collator operator, and small parts assembler are compatible with Dr. Boyd's opinion, even if fully credited. As such, reversal is not warranted in regard to the issues raised by plaintiff.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 23rd day of September, 2019.

        /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge